Thomas C. Chimera, J.
The parties were married in April, 1943. They have two daughters, Barbara and Diane, 15 and 8 years old respectively.
Plaintiff sues for separation, grounding her action (1) in abandonment, and (2) inadequacy of support.
If plaintiff is to succeed here she may do so only upon proof of willful abandonment within the meaning of the law (first cause of action), since the allegation of inadequacy of support (second cause of action) refers to a time subsequent to the alleged abandonment. Logically, if plaintiff’s own conduct justified defendant in leaving the family household and establishing his own living quarters, the parties must be left as they were (Russ v. Russ, 3 A D 2d 888). Inadequacy of support for any period subsequent to his leaving, under such an assumed state of facts, would furnish no legal ground for judgment of separation such as is provided for in subdivision 4 of section 1161 of the Civil Practice Act.
From her story, it appears that defendant, her husband, first left the marital household for a period of six months in and about 1950. Again in January 1957 he left for a short period of time, taking up residence at the Hotel Willard, 330 West End Avenue, Hew York City. In January, 1958, he left once again for a period of four weeks to live at the Hotel Manhattan Towers, Broadway at 76th Street, Hew York City. Each of these incidents followed unpleasant emotion-packed arguments wholly unworthy of rational adults. Later, April 27 of the same year, *907 defendant again left his home, to which he has not returned since, except to remove most of his personal effects and records in several stages. Once again he took up residence at the Hotel Manhattan Towers.
Plaintiff says that this last state of affairs was triggered by a quarrel over defendant’s refusal to take one of their daughters out for a spell. Defendant admits this and the other incidents as well, charging their origin to plaintiff’s unreasonableness. Plaintiff insists that the “ shoe is on the other foot that the quarrels over the years were related to defendant’s unwillingness or inability to assume responsibility both in his work and in his family life. Of his work, it is said that every time defendant was about to be promoted to a position of responsibility with better pay, he quit his job; of his family life, that his devotion to his wife, and particularly to his children, was minimal and perfunctory.
Plaintiff not only failed to pin down these generalities, but indicated clearly her conviction that defendant was emotionally disturbed. Indeed, the evidence shows that defendant was for a long time seeking and obtaining at some cost what is euphemistically referred to as “professional care”, a fact which would seem to bear out her impressions.
How a woman, convinced of her husband’s long-standing emotional instability, can justify insisting that he cope with reality, or how she can expect him to overcome his emotional disturbances by constantly reminding him of his “ failures ”, is difficult to understand, unless one concludes that she herself is emotionally unstable. Nor is such a conclusion difficult to arrive at. Her demeanor on the stand raises a suspicion, and the records of the Domestic Relations Court in evidence here lend weight to it.
Plaintiff says that while defendant was preparing to leave on this last occasion, she told him that if he left this time she did not know whether she would take him back; that he ought to stay for the children’s sake. To this, defendant is said to have answered that if plaintiff would submit to psychiatric care, he would think about it. Except to say that he was under the impression that he was leaving at “ her invitation ”, he makes no denial of this conversation. His departures are explained as the desperate resort of a man who was being worn down by an incessant barrage of criticism and complaint far into the night — night after night; that his peace of mind was disturbed, his sleep interfered with, and his sanity threatened.
It is not entirely clear whether plaintiff willingly ever accepted the suggestion that she herself should seek “ professional care ”, *908 even when defendant’s psychiatrist and the Domestic Relations Court itself recommended the Jewish Family Service, which both together attended for a short time and which only the husband continues to avail himself of. Plaintiff says she felt that the Jewish Family Service was biased since it was recommended by the defendant’s psychiatrist; that she suggested a neutral service and that defendant refused. The impressions of the Jewish Family Service reflected in its report to the Domestic Relations Court cast considerable doubt on her sincerity in this regard.
It is a fact of more than passing significance that on each of the last three occasions when defendant left the marital domicile, he took up residence at hotels a short walk away from the marital domicile, so that he could be near and available to his family. And what about those four weeks in 1958 when, although he slept at the Hotel Manhattan Towers, he came back to the marital domicile almost every day to ‘ ‘ work on his papers ”, bringing in Chinese food on Saturday nights. These are hardly the acts of a “ fugitive ” or a man wholly devoid of family feeling!
The law has not as yet “ progressed ” to the point where a decree of separation will be granted solely on the ground of incompatibility or on the ground that an “offending” spouse has failed to live up to the other’s desired standard of excellence — a standard which the former, by reason of emotional disturbance or other involuntary “failures”, appears to be incapable of achieving.
On this record it can be said of the parties that their characters are incompatible and their differences, at least for the moment, are seemingly irreconcilable, although both profess an abiding love for each other. “ The fact that incompatibility exists and that a husband and wife find it impossible to live in harmony, while no doubt furnishing justifiable reasons as between themselves for separating, does not meet the requirements for a judicial separation fixed by the statute and the policy of the State. A spouse may be unfit to live with as such, because of habits, character or temperament, but unless [one of the grounds enumerated in Civ. Prac. Act, § 1161 is established] * * * the court has no power to decree separation.” (Averett v. Averett, 189 App. Div. 250, 252; Russ v. Russ, 3 A D 2d 888, supra.)
Recognizing this to be a situation requiring agonizing effort on the part of the parties and the intervention of skills outside the judicial orbit, this court offered to refer the matter to its *909 marriage counselling service. The offer was declined by both parties.
I am therefore compelled to rule that the relations which existed between the parties for a substantial period of time and plaintiff’s attitude toward her husband were such that he was justified in leaving her and establishing his own living quarters.
Plaintiff having failed to establish her right to judgment on her first cause of action, a determination of the issue posed by her second cause of action becomes unnecessary, for, as has already been said, plaintiff does not fall within the ‘ ‘ non-support ’ ’ provision of the Civil Practice Act above cited.
The effect of the foregoing conclusions “ supportwise ” is not as harsh as it would seem without a review of plaintiff’s tactics prior to the commencement of this suit; for the second cause of action is a rehash of a charge once already aired in the Domestic Relations Court as late as March 31, 1959, and there found so unimpressive that plaintiff was convinced by that court to withdraw her petition “ without prejudice to a renewal at any time * * * when you (plaintiff) feel the support is inade-
quate.” The March 31, 1959 note in the “Chronological Record” of the Domestic Relations Court discloses that that court then found “ under testimony ” that defendant was supporting his wife and children “ according to his means under separate maintenance.” Defendant’s threat to leave the jurisdiction, urged as the ground for petitioning that court, apparently having been found to be an idle one made in anger, plaintiff’s motivation in the Domestic Relations Court appears to be aimed solely at a judicial direction that defendant increase his support payments.
Viewed in this light, the second cause of action here is exposed as a second “ shot ” at the same “ target ” — a naked attempt to take the money issue away from the Domestic Relations Court, which had dealt with it admirably in the first instance, and which it is fully competent to review upon further application by plaintiff.
Finally, while custody and maintenance of the children may nevertheless be determined by this court in spite of a denial of judgment to plaintiff (Civ. Prac. Act, § 1170-a), no legal or practical purpose will be served in prolonging the litigation here, since it is apparent that the parties have no desire to disturb the status quo, at least as far as custody and visitation are concerned.
In view of the foregoing, the complaint is dismissed and additional counsel fees are denied.